RANDY GROSSMAN
United States Attorney
EVANGELINE A. DECH
Assistant U.S. Attorney
California State Bar No. 326832
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-9744
evangeline.dech@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 22-mj-20306-AHG-WQH |
|---|---|
| v. | |
| J. INES RUIZ-RIVERA, | **THE UNITED STATES' ANSWERING BRIEF** |
| Defendant. | |

# TABLE OF CONTENTS

Page

I. Introduction ................................................................... 1

II. Jurisdiction ................................................................. 1

III. Background ................................................................ 1

   A. The Arrest and Charge ............................................ 1

   B. Pretrial Motions ...................................................... 2

   C. Magistrate Judge Finds Defendant Guilty ............... 3

IV. Argument .................................................................... 4

   A. The Magistrate Judge Properly Admitted Defendant's Post-Arrest Statements ..................... 5

     i. Defendant's Miranda Waiver Was Knowing, Intelligent, and Voluntary .......................... 5

     ii. The Miranda Warning Was Adequate ............. 7

     iii. Any Error Was Harmless ............................... 9

   B. The Magistrate Judge Properly Admitted Defendant's Field Statements ............................... 10

     i. Agent Seuferer's Testimony About Defendant's Field Statements Was Properly Admitted Under Federal Rule of Evidence 801(d)(2) .................................................. 11

       a. Hearsay ................................................... 11

       b. Expert Testimony ................................. 11

     ii. Defendant Was Not in Custody Subject to Interrogation when He Made Field Admissions to Agent Seuferer and His Admissions Were Voluntary .................. 12

       a. Interrogation and Custody ..................... 13

       b. Defendant's Field Statements Were Voluntary ............................................. 15

   C. All Testimony About Booties Was Properly Admitted and Considered ................................... 16

     i. Agent Seuferer Properly Testified About His Observations of Defendant's Booties ...... 16

     ii. The Government's Failure to Preserve the Booties Did Not Violate Due Process .......... 17

   D. The Government Proved Defendant's Alienage Beyond a Reasonable Doubt ............................... 18

   E. Section 1325(a)(1) Does Not Violate Equal Protection ... 22

V. Conclusion .................................................................. 22

# TABLE OF AUTHORITIES

Cases:

*Anderson v. City of Bessemer*, 470 U.S. 564 (1985) ..................... 17

*Arizona v. Youngblood*, 488 U.S. 51 (1988) .......................... 17, 18

*Beckwith v. United States*, 425 U.S. 341 (1976) ......................... 5

*Bradford v. Davis*, 923 F.3d 599 (9th Cir. 2019) ........................ 6

*California v. Trombetta*, 467 U.S. 479 (1984) ......................... 18

*Colado v. Allison*, No. 11-cv-2751-H-WVG,
      2012 WL 8019469 (S.D. Cal. Oct. 26, 2012) ..................... 13

*Colorado v. Connelly*, 479 U.S. 157 (1986) .......................... 6, 15

*Derrick v. Peterson*, 924 F.2d 813, 824 (9th Cir. 1990) ................. 7

*Florida v. Powell*, 559 U.S. 50 (2010) ................................. 7

*Grisby v. Blodgett*, 130 F.3d 365 (9th Cir. 1997) ...................... 18

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) .................. 14

*Miller v. Fenton*, 474 U.S. 104 (1985) ............................... 16

*United States v. Niebla-Torres*, 847 F.3d 1049 (9th Cir. 2017) .......... 19

*Nichols v. Azteca Rest. Enters.*, 256 F.3d 864 (9th Cir. 2001) .......... 17

*Old Chief v. United States*, 519 U.S. 172 (1997) ...................... 10

*Sanchez-Llamas v. Persson*, 621 F. App'x 498 (9th Cir. 2015) ........... 6

*Sandez v. United States*, 239 F.2d 239 (9th Cir. 1956) ................. 19

*Terry v. Ohio*, 392 U.S. 1 (1968) ................................... 14

*Vill. of Arlington Heights v. Metro. Hous. Develop. Corp.*,
      429 U.S. 252 (1977) ............................................ 22

*United States v. Bassignani*, 575 F.3d 879 (9th Cir. 2009) ............. 13

*United States v. Bautista*, 684 F.2d 1286 (9th Cir. 1982) .............. 15

*United States v. Butler*, 249 F.3d 1094 (9th Cir. 2001) ................ 9

*United States v. Cabrera-Hoil*, No. 19-cr-0073-JTR,
      2019 WL 3412915 (E.D. Wash. July 29, 2019) .................... 20

*United States v. Campos-Atrisco*, No. 19-mj-024683-KSC-BAS,
      2021 WL 5332918 (S.D. Cal. Nov. 16, 2021) ................. 22 n.2

*United States v. Carrillo-Lopez*, No. 21-10233 ...................... 22

*United States v. Cervantes-Flores,* 421 F.3d 825 (9th Cir. 2005) ....... 14

*United States v. Connell*, 869 F.2d 1349 (9th Cir. 1989) ............... 5

*United States v. Del Valle-Garcia*, No. 13-cr-418-JAD-GWF,
      2014 U.S. Dist. LEXIS 51194 (D. Nev. April 14, 2014) ........... 11

*United States v. Dickerson*, 530 U.S. 428 (2000) ...................... 15

*United States v. Freeman*, 498 F.3d 893 (9th Cir. 2007) ............... 12

*United States v. Galindo-Gallegos,* 244 F.3d 728 (9th Cir. 2001)     14

*United States v. Gallegos-Aparicio*, No. 19-cr-2637-GPC,
    2020 WL 7318124 (S.D. Cal. Dec. 11, 2020)     22 n.2

*United States v. Garibay*, 143 F.3d 534 (9th Cir. 1998)     5, 6

*United States v. Garcia-Villegas*, 575 F.3d 949 (9th Cir. 2009)     19, 21

*United States v. Gonzalez-Godinez*, No. 19-cr-3506-BGS-DMS,
    2021 WL 533517 (S.D. Cal. Feb. 12, 2021)     21, 22

*United States v. Gutierrez-Salinas*, 640 F. App'x 690 (9th Cir. 2016)     13

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000)     10

*United States v. Hernandez*, 105 F.3d 1330 (9th Cir. 1997)     19, 21

*United States v. Kim*, 292 F.3d 969 (9th Cir. 2002)     13

*United States v. Lazcano-Neria*, No. 20-mj-04538-AHG,
    2020 WL 6363685 (S.D. Cal. Oct. 29, 2020)     22 n.2

*United States v. Lopez-Alvarez*, 970 F.2d 583 (9th Cir. 1992)     19, 21 n.1

*United States v. Lucas-Hernandez*, No. 19-mj-24522-LL-TWR,
    2022 WL 1556161 (S.D. Cal. May 17, 2022)     11, 12, 22 n.2

*United States v. Medina-Villa*, 567 F.3d 507 (9th Cir. 2009)     15

*United States v. Morales-Roblero*, No. 19-mj-24442-AHG,
    2020 WL 5517594, at *7–10 (S.D. Cal. Sept. 14, 2020)     22 n.2

*United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991)     10, 11

*Opper v. United States*, 348 U.S. 84 (1954)     19

*United States v. Pang*, 362 F.3d 1187 (9th Cir. 2004)     10

*United States v. Price*, 980 F.3d 1211 (9th Cir. 2019)     5

*United States v. Rios-Montano*, No. 19-cr-2123-GPC,
    2020 WL 7226441 (S.D. Cal. Dec. 8, 2020)     22 n.2

*United States v. Ruiz-Lopez*, 749 F.3d 1138 (9th Cir. 2014)     19

*United States v. San Juan-Cruz*, 314 F.3d 384 (9th Cir. 2002)     8

*United States v. Sivilla*, 714 F.3d 1168 (9th Cir. 2013)     17, 18

*Thomas v. United States*, 370 F.2d 621 (9th Cir.1967)     21 n.1

*United States v. Valdez-Novoa*, 780 F.3d 906 (9th Cir. 2015)     19

*United States v. Valenzuela–Bernal*, 458 U.S. 858 (1982).     17, 18

*United States v. Vasquez-Olea*, No. 10-cr-1754-LAB,
    2011 WL 197582 (S.D. Cal. Jan. 19, 2011)     13, 14

*United States v. Vasquez-Olea*, 463 F. App'x 704 (9th Cir. 2011)     14, 15

*United States v. Villacana-Ochoa*, 436 F. App'x 737 (9th Cir. 2011)     9

*United States v. Whittemore*, 776 F.3d 1074 (9th Cir. 2015)     17

*United States v. Zapata*, 524 F. App'x 327 (9th Cir. 2013)     8, 9

Statute:

   8 U.S.C. § 1325(a)(1)                                                       passim

Rules:

   Fed. R. Evid. 602                                           10, 12
   Fed. R. Evid. 702(a)                                      12
   Fed. R. Evid. 801(d)(2)                               10
   Fed. R. Crim P. 16                                        16

## I.    INTRODUCTION

Border Patrol found Defendant J. Ines Ruiz-Rivera in the middle of the night hiding next to a shed in a remote area just north of the United States/Mexico border and twenty-five miles away from the nearest port of entry. Consistent with his actions, Defendant twice admitted he was in the United States illegally. Following a bench trial, United States Magistrate Judge Allison H. Goddard convicted Defendant of attempted illegal entry. Defendant raises various challenges to his conviction, including the evidence at trial was insufficient to establish his guilt and that several statements at trial should have been excluded. None of Defendant's claims have merit. This Court should, therefore, affirm Defendant's conviction.

## II.    JURISDICTION

The United States agrees with Defendant's statement of jurisdiction.

## III.    BACKGROUND

### A. The Arrest and Charge

In February 2020, at 10:30 p.m., Border Patrol Agent Kevin Seuferer responded to a radio call that an individual had crossed the international border fence and was headed northbound. Dkt. No. 87 (Transcript of Bench Trial ("TT") at 11. Agent Seuferer responded to the location—"a little bit of a town but the surrounding area is all high desert"—twenty-five miles east of the nearest port of entry in Tecate. *Id.* at 10, 12. After the individual was apprehended by another agent, Agent Seuferer's canine partner continued to pull toward a shed about 60 feet away. *Id.* at 13–14. At the shed, Agent Seuferer first noticed booties ("blankets an individual ties around their shoes to disguise their shoe prints") sticking out from the side of the shed. *Id.* at 14. Then he saw the booties were on Defendant, who was lying down next to the shed. *Id.*

Agent Seuferer conducted a standard immigration inspection in Spanish, asking Defendant "what country he's a citizen of, if he has any immigration documents, and if he knows that he's here illegally in the United States." *Id.* at 16.

1

Defendant responded he was a citizen of Mexico, had no documents allowing him to be in the United Sates, and acknowledged he was in the United States illegally. *Id.* at 22. Agent Seuferer then arrested Defendant for attempted illegal entry and drove him to the nearest Border Patrol station.

Two hours after his arrest, Defendant met with Border Patrol Agent Juan Pablo Rivera. *Id.* at 53. Agent Rivera advised Defendant of his *Miranda* rights "at least three or four times." *Id.* at 55. Defendant acknowledged and waived these rights. Agent Rivera then advised Defendant of his rights related to immigration proceedings. Dkt. No. 26-1 at 12–14. Agent Rivera said the interview could be the only opportunity Defendant would have to express a fear of being deported to Mexico. *Id.* at 13.

During his interview with Agent Rivera, Defendant again admitted that he is a citizen of Mexico, has had three visa applications previously denied, entered the United States that day by climbing over the fence, and was headed to Los Angeles to visit family. TT at 58–59.

Defendant was then charged with attempted illegal entry in violation of 8 U.S.C. § 1325(a)(1).

**B. Pretrial Motions**

Defendant moved to dismiss the charge for various reasons including claims of equal protection and due process violations, § 1325 being unconstitutional, and the Complaint failed to allege all the elements of a § 1325 offense. Dkt. Nos. 16, 42. He also moved to suppress statements he made at the time of his arrest and shortly thereafter. Dkt. No. 26.

The Magistrate Judge denied Defendant's motions, concluding "Defendant's argument that § 1325(a)(1) is 'presumptively unconstitutional' . . . fails" and § 1325 like its felony counterpart satisfies rational basis because it" was "enacted to assist in the control of unlawful immigration … ." Dkt. No. 61 at 6 (quotations omitted). The Magistrate Judge noted Defendant "completely ignored" subsequent enactments and

legislative history. *Id.* at 5. Further, the Magistrate Judge held "there is no . . . express requirement in §1325 . . . that a violation be 'knowing,'" thus "knowledge of alienage" is not "an element of a charge under § 1325" and was not required to be alleged in the Complaint. Dkt. No. 44 at 3.

Finally, after viewing his post-arrest interview, the Magistrate Judge found Defendant's *Miranda* waiver knowing, intelligent, and voluntary: "there were multiple times where [Defendant] was told you don't have to talk to [agents]. You can wait to have an attorney. Do you want an attorney? And [Defendant] said no to that." TT at 70. She also concluded the immigration warnings did not cause any confusion. *Id.* at 82.

### C. Magistrate Judge Finds Defendant Guilty

At trial, the United States called three witnesses: apprehending Agent Seuferer, interviewing Agent Ruiz, and an A-file custodian, Border Patrol Agent Daniel Alexander. Through the witnesses, the Government elicited the facts outlined above, including Defendant's furtive efforts to enter the United States in a remote place far from a port of entry while hiding his tracks and himself in the middle of the night, and his related admissions.

Agent Seuferer testified to his training and experience, including his Spanish language capabilities. Agent Seuferer stated he underwent two-months of Spanish language training, employs the Spanish language on a daily basis in the performance of his duties, has completed at least a thousand immigration inspections in Spanish, and he and Defendant understood one another. TT at 6–7, 16.

Agent Ruiz testified that although it was hard for Defendant to hear the repeated *Miranda* advisal "from one side of the ear," Defendant "appeared calm and was willing to speak. He wasn't nervous. He wasn't scared. He was willing to answer my questions." TT at 57.

1    Additionally, Agent Alexander testified about Defendant's A-file, Current
2    Immigration Status ("CIS") and CLAIMS databases, all of which listed Defendant as
3    a Mexican citizen without permission to enter the United States. TT at 87–89.

4    Defendant did not present any evidence.

5    The Magistrate Judge found Defendant guilty. That conclusion relied on several
6    facts, including: (1) "Defendant admitted in his post-*Miranda* statements that he
7    entered the United States by coming over the border fence"; (2) "[t]hat admission is
8    also corroborated by circumstantial evidence of his arrest, including the time of night
9    when he was found, the fact that he was hiding and its close proximity to the border,
10   and in addition, that he was found within 25 miles east of the nearest port of entry in
11   Tecate"; and (3) "there's an A-file for Defendant and there's no record of Defendant
12   seeking permission to enter." TT at 113. The Magistrate Judge found "the
13   Government … met its burden to demonstrate the Defendant is guilty beyond a
14   reasonable doubt to the charge of violating 8 U.S.C. Section 1325(a)(1)." *Id.* at 114.
15   Defendant was then sentenced to time served. *Id.* at 116.

16   This appeal follows.

## IV.   ARGUMENT

18   The Court should affirm Defendant's conviction. Defendant received an
19   adequate *Miranda* warning several times, which Defendant confirmed he understood.
20   The Magistrate Judge correctly found his statements were knowing, intelligent, and
21   voluntary. Even if these statements were improperly admitted, it was harmless error
22   in light of the other evidence presented at trial. Similarly, Agent Seuferer's testimony
23   of Defendant's field statements was properly admissible.

24   Defendant claims all testimony regarding booties violated Federal Rule of
25   Criminal Procedure 16. It did not; this rule does not apply here. The absence of
26   photographs and the booties did not discredit Agent Seuferer's testimony that he saw
27   Defendant wearing booties during the arrest.

28

4

Likewise, there was more than adequate evidence—including no record of permission for Defendant to be in the United States and that Defendant hid in a rural area at night, just 200 yards north of the border and 25 miles from the nearest port of entry—corroborating Defendant's admissions he was a Mexican citizen with no permission to be in the United States.

Finally, Defendant's equal protection claim has been thoroughly examined and rejected by various courts in this district. The result here should be no different.

## A. The Magistrate Judge Properly Admitted Defendant's Post-Arrest Statements

Whether agents delivered adequate *Miranda* warnings is a question of law that is reviewed de novo. *United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir. 1989). Similarly, the Court must "examine the entire record and make an independent determination of the ultimate issue of voluntariness." *Beckwith v. United States*, 425 U.S. 341, 348 (1976) (quotation omitted). Whether a defendant knowingly and intelligently waived his *Miranda* rights is a question of fact reviewed for clear error. *See United States v. Price*, 980 F.3d 1211, 1226 (9th Cir. 2019).

### i. *Defendant's* Miranda *Waiver Was Knowing, Intelligent, and Voluntary*

The Magistrate Judge's finding that Defendant understood and explicitly waived his *Miranda* rights was supported by the testimony of Agent Ruiz and the Court's own inferences from Defendant's demeanor during the video-recorded interview. Defendant claims he was incapable of understanding or waiving his *Miranda* rights given he "had no education, and no experience with the criminal or immigration system." Dkt. No. 94 (Appellant's Opening Brief ("AOB")) at 11. Considering the totality of the circumstances, however, Defendant's waiver was valid.

For custodial statements to be admissible, the defendant's "waiver of *Miranda* rights must be voluntary, knowing, and intelligent." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998) (quotation omitted). The Government bears the burden of proving by a preponderance of the evidence that a defendant knowingly and

intelligently waived his *Miranda* rights. *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)). To satisfy this burden, the prosecution must introduce sufficient evidence to establish the totality of the circumstances show he was "aware of the nature of the right being abandoned and the consequences of the decision to abandon it." *Garibay*, 143 F.3d at 536–37 (quotation omitted). In evaluating the totality of the circumstances, courts must consider "[r]elevant circumstances" such as "a suspect's age, education, intelligence, physical health, and prior experience with the criminal system; the length, location, and conditions of detention; the length and nature of questioning; and the use by law enforcement of any threats, punishments, or inducements." *Bradford v. Davis*, 923 F.3d 599, 616 (9th Cir. 2019).

Those factors point to a knowing waiver here. First, Defendant's background, experience, and conduct demonstrate he understood his *Miranda* rights and the consequences of waiving them. Defendant was 55 at the time of his offense. He was born in Mexico and a Spanish speaker. He understood he was in the United States illegally based on three previously denied visa applications. TT at 59. And he demonstrated competency throughout the interview by asking clarifying questions, answering the questions posed, and was able to take Agent Ruiz through the events of his offence in a coherent manner. Indeed, the Magistrate Judge relied on Defendant's five separate affirmative responses to his comprehension of the rights explained to him when finding the waiver knowing and voluntary. *Id.* at 62–64; *see also Sanchez-Llamas v. Persson*, 621 F. App'x 498, 499 (9th Cir. 2015) (unpublished) (holding claims of low English-comprehension skills and intoxication were not sufficient to defeat waiver where defendant was advised of his rights and appeared coherent).

The nature of Defendant's detention before and during questioning also strongly indicates the Magistrate Judge correctly upheld Defendant's *Miranda* waiver. Defendant was interviewed just two hours after his initial contact with immigration officials and the entirety of the interview lasted only about fifteen

minutes. *See* TT at 53; Dkt. No. 26-1 at 4. He was not handcuffed, and no weapons were drawn or displayed during the waiver. TT at 54. There is no indication Defendant was mistreated or intimidated. Just the opposite: Agent Ruiz was patient and polite and read Defendant his *Miranda* rights "at least three or four times" to ensure Defendant heard "correctly" and to "make sure he understood it." *Id.* at 55. Agent Ruiz further testified Defendant appeared "calm," not "nervous" and not "scared" during the interview. *Id.* at 57.

After watching the interview "to see if [Defendant] indicates indicia of confusion or not understanding," TT at 66, the Magistrate Judge properly concluded Defendant is "a capable individual … demonstrated by his demeanor during the interview … his age and previous history in terms of prior immigration rights," *id.* at 79. *See Derrick v. Peterson*, 924 F.2d 813, 824 (9th Cir. 1990) (finding defendant's waiver of *Miranda* rights knowing and voluntary, notwithstanding his youth and low mental capacity, where he was read or informed of his rights at least four times and waived those rights either orally or in writing each time), *overruled on other grounds* by *U.S. v. Preston*, 751 F.3d 1008 (9th Cir. 2014).

Though Defendant's written waiver is of low probative value, given Defendant's illiteracy, Agent Ruiz orally advised Defendant his *Miranda* rights in his native tongue multiple times and answered all of Defendant's questions.

Considering the totality of the circumstances, including Defendant's alertness and coherence during the interview, his post-*Miranda* statements were made knowingly, intelligently, and voluntarily.

### ii.  The Miranda Warning Was Adequate

In determining whether a *Miranda* warning is adequately conveyed, reviewing courts determine only whether the warning reasonably conveyed to a suspect his rights. *Florida v. Powell*, 559 U.S. 50, 60, 64 (2010) ("Different words were used in the advice [defendant] received, but they communicated the same essential message.").

1    Here, citing *United States v. San Juan-Cruz*, 314 F.3d 384 (9th Cir. 2002),
2    Defendant claims he received "a second set of warnings that are inconsistent with
3    *Miranda*." AOB at 16. He is wrong. The problem in *San Juan-Cruz* is not present
4    here. In *San Juan Cruz*, Border Patrol agents first advised the defendant his
5    administrative rights in an immigration proceeding. 314 F.3d at 386. Agents then
6    read the defendant his *Miranda* rights. *Id.* As part of the administrative rights, the
7    agents told defendant he had the right to an attorney but "not at the government's
8    expense." *Id.* When read his *Miranda* rights, agents told the defendant "if he could
9    not afford an attorney, one would be appointed for him." *Id.* at 388. The Ninth Circuit
10   found these warnings contradictory and confusing and thus held the defendant's
11   admissions following the warnings should have been suppressed. *Id.* at 389.

12   That is not what happened here. Instead of administrative rights followed by
13   potentially contradictory a *Miranda* advisal, as in *San Juan Cruz*, here Defendant
14   waived *Miranda* and only then heard his administrative rights. Unlike in *San Juan-*
15   *Cruz*, the immigration advisal did not contradict the *Miranda* advisal. In pertinent
16   part, the immigration advisal stated this could be Defendant's only opportunity to
17   provide information regarding his immigration case. Dkt. No. 26-1 at 13–14. Nothing
18   in the administrative advisal negated Defendant's right to remain silent or implied
19   he would have to pay for an attorney.

20   Here, the Magistrate Judge properly found there was nothing contradictory or
21   confusing about the warnings. She stated, "I disagree that there's a conflict in his
22   right to remain silent. I believe at the point he had already gone through with Agent
23   Rivera multiple times that he had the right to remain silent … the additional
24   administrative warning he was given was more geared towards whether or not he had
25   to answer honestly." TT at 82. Indeed, Defendant was not shy asking questions for
26   clarification as demonstrated during the *Miranda* waiver but did not express any
27   confusion in regard to his immigration rights. These facts parallel those in *United*
28   *States v. Zapata* where the Ninth Circuit found no error when the district court denied

8

a motion to suppress the defendant's confession "[b]ecause Zapata had waived his rights before the allegedly confusing statement was made, the statement could not have generated confusion at the time Zapata made his waiver decision. There was no flaw in the warnings Zapata received; they were clear and permitted Zapata to act knowingly with respect to his rights." 524 F. App'x 327, 328 (9th Cir. 2013) (unpublished).

Accordingly, the Magistrate Judge properly admitted Defendant's post-*Miranda* statements.

### iii.  Any Error Was Harmless

Even if Defendant's statements were improperly admitted, the error was harmless beyond a reasonable doubt. *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001) ("The admission of statements made in violation of a person's *Miranda* rights is reviewed for harmless error."). The evidence of Defendant's guilt in this case was overwhelming. Defendant admitted his alienage and lack of documents to Agent Seuferer in the field prior to being arrested. And his post-arrest admissions were largely duplicative of his field statements. The only post-arrest additions were the method and reasons for crossing. In reaching her conclusion, the Magistrate Judge found "persuasive" the fact that Defendant "was trying to avoid being seen, lying next to the shed." TT at 111. Additionally, multiple immigration databases confirmed Defendant's undocumented status. Even without the post-arrest statements, then, the evidence was sufficient to prove the charge beyond a reasonable doubt. Admission of the statements at trial was therefore harmless. *See United States v. Villacana-Ochoa*, 436 F. App'x 737, 738–39 (9th Cir. 2011) (unpublished) ("[E]ven assuming error in the denial of [defendant's] motion to suppress [post-*Miranda* statements], it was harmless because the other evidence at trial was more than sufficient to support the verdict.").

//

//

9

## B. The Magistrate Judge Properly Admitted Defendant's Field Statements

Defendant's field admissions were properly admitted as statements of a party opponent under Federal Rule of Evidence 801(d)(2). Further, Agent Seuferer testified as to matters within his personal knowledge as a lay witness under Rule 602, and, contrary to Defendant's assertion, did not need to be qualified as an expert to do so. Moreover, Defendant was not in custody when he made these admissions to Agent Seuferer.

"A district court's evidentiary rulings during trial are reviewed for abuse of discretion." *United States v. Hankey*, 203 F.3d 1160, 1166 (9th Cir. 2000) (citing *Old Chief v. United States*, 519 U.S. 172, 174 n.1 (1997)). Reversal is appropriate only "if an erroneous evidentiary ruling more likely than not affected the verdict." *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) (quotation omitted).

### i. Agent Seuferer's Testimony About Defendant's Field Statements Was Properly Admitted Under Federal Rule of Evidence 801(d)(2)(A)

Agent Seuferer's testimony of his direct interaction with Defendant is virtually identical to any illegal entry/re-entry case where a Border Patrol agent performs a brief immigration inspection in the Spanish language. Defendant's claims of "hearsay" and "expert testimony" should be denied.

#### a. Hearsay

"A statement is not hearsay if … [t]he statement is offered against a party and … was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). Here, Defendant made admissions to Agent Seuferer at the time of his apprehension, namely that Defendant was from Mexico, present without documents allowing him to enter or remain in the United States legally, and knew he was in the United States illegally. TT at 22.

Defendant's hearsay argument appears to be based on a misreading and misapplication of *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991). According to Defendant, *Nazemian* prohibits Agent Seuferer from testifying to Defendant's

Spanish-language admissions because he is not a "language conduit." AOB at 18. *Nazemian* has no relevance to this case.

Unlike in *Nazemian*—where the Ninth Circuit addressed "the issue of how to treat extrajudicial statements made through an interpreter when the testifying witness was unable to understand the original language of the declarant and can testify only to the words of the interpreter," 948 F.2d at 526—Agent Seuferer did not rely on an interpreter when questioning Defendant. *See United States v. Lucas-Hernandez*, No. 19-mj-24522-LL-TWR, 2022 WL 1556161, at *5 (S.D. Cal. May 17, 2022) (distinguishing *Nazemian* where agent did not use an interpreter); *see also United States v. Del Valle-Garcia*, No. 13-cr-418-JAD-GWF, 2014 U.S. Dist. LEXIS 51194, at * 13 (D. Nev. April 14, 2014) (finding *Nazemian* "simply has no application" where there was no interpreter present). Further, and also unlike *Nazemian*, no interpreter was required because Agent Seuferer was sufficiently proficient in Spanish to understand Defendant's admissions. *See* TT at 7, 16 (Agent Seuferer testifying he conducted at least a thousand immigration inspections in Spanish—"Typically every day that [he] work[s]"—that Defendant appeared to understand Agent Seuferer's questions, and that Agent Seuferer understood Defendant's responses).

Finally, Defendant had the opportunity to and did cross-examine Agent Seuferer about his ability to understand Defendant's Spanish language admissions. *See Lucas-Hernandez*, 2022 WL 1556161, at *5 ("Spanish field statements [were] not hearsay" where the agent had an 8-week Spanish training, conducted hundreds of immigration inspections, was able to understand the defendant' original language, and testified what the defendant told him directly.).

b. Expert Testimony

Defendant next incorrectly claims that "[b]y acting as a Spanish interpreter in his conversation with [Defendant] in the field, Agent Seuferer was purporting to employ specialized knowledge[,]" meaning "the government had to qualify Agent

11

Seuferer as an expert." AOB at 19. Agent Seuferer did not testify to any "scientific, technical, or otherwise specialized knowledge," *see* Fed. R. Evid. 702(a), but rather to his "personal knowledge of" the admissions Defendant made to him in the field. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Again, Agent Seuferer testified he conducted "at least a thousand" immigration inspections in Spanish. TT at 7. He further confirmed during Defendant's immigration inspection Defendant seemed to understand Agent Seuferer's questions in Spanish and Agent Seuferer understood Defendant's responses. *Id.* at 16. As the Magistrate Judge correctly recognized, "[e]ven though Agent Seuferer is not a native Spanish speaker, he has sufficient training to understand, and he uses Spanish for these immigration inspections, which are relatively simple, on a regular basis." TT at 48–49. The Government laid a sufficient foundation that Agent Seuferer testified based on his personal knowledge and understanding of Defendant's responses. Defendant's field admissions were, therefore, properly admitted. *See Lucas-Hernandez*, 2022 WL 1556161, at *5 ("[S]o long as [the] Agent … laid a sufficient foundation that he was able to understand what [defendant] relayed to him, the Court properly may rely on [the Agent's] testimony."); *see also United States v. Freeman*, 498 F.3d 893, 904–05 (9th Cir. 2007) (holding government established a foundation for officer's testimony about the meaning of defendant's statements where testimony was based on "direct perception of several hours of intercepted conversations … and other facts he learned during the investigation").

Accordingly, Agent Seuferer's testimony was not improper hearsay and correctly admitted as lay testimony.

/ /

/ /

/ /

### ii. *Defendant Was Not in Custody Subject to Interrogation when He Made Field Admissions to Agent Seuferer and His Admissions Were Voluntary*

Defendant waived his right to claim error that his field statements violated *Miranda* or were involuntary. The Court should not entertain these arguments. When Defendant first raised these issues in his Motion to Suppress, Dkt. No. 26 at 22, the Magistrate Judge reserved ruling on them until trial, to be "clear which statements are at issue, and what evidence the Government will present to support their admission," Dkt. No. 45 at 3. Defendant did not renew his objection at trial. Defendant, therefore, failed to properly preserve these arguments for appeal. *See Colado v. Allison*, No. 11-cv-2751-H-WVG, 2012 WL 8019469, at *18 (S.D. Cal. Oct. 26, 2012) ("[T]he court never made a definitive and explicit ruling on Petitioner's pretrial motion," which "rendered it necessary for Petitioner's counsel to renew his objection at trial. Thus, Petitioner waived his right to claim error in the court's ruling … ."), *report and recommendation adopted*, 2013 WL 1932900 (May 8, 2013).

To the extent the Court hears these matters, Defendant's appeal should nonetheless be denied because Defendant was not subject to custodial interrogation at the time of his field admissions, which were made voluntarily.

### a. Interrogation and Custody

Whether a person was "interrogated" or was "in custody" for purposes of *Miranda* is a determination that is reviewed *de novo*. *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009). However, "[t]he factual findings underlying the district court's decision, however, are reviewed for clear error." *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002).

Admissions provided to Border Patrol agents in the field are admissible. "[T]he Ninth Circuit has repeatedly held that brief questioning near the border is a non-custodial *Terry* stop that does not trigger *Miranda*." *United States v. Gutierrez-Salinas*, 640 F. App'x 690, 694 (9th Cir. 2016) (unpublished) (citations omitted); *see also United States v. Vasquez-Olea*, No. 10-cr-1754-LAB, 2011 WL 197582, at *4 (S.D.

Cal. Jan. 19, 2011) ("Being forced to stop and answer preliminary questions at the United States border does not place the person 'in custody' under *Miranda*."), *aff'd*, 463 F. App'x 704, 705 (9th Cir. 2011).

For example, in *United States v. Galindo-Gallegos,* two Border Patrol officers apprehended a group of 15 to 20 individuals running from the border in an isolated location, told them to sit on the ground, and asked them questions regarding their citizenship and immigration status. The individuals were not "free to leave," and the questions posed to them "were a necessary predicate to letting anyone go free." 244 F.3d 728, 730 (9th Cir. 2001). The Court upheld the denial of the defendant's motion to dismiss, holding "this is ordinarily a *Terry* stop, not custodial questioning." *Id.* at 732.

Similarly, in *United States v. Cervantes-Flores*, a Border Patrol agent apprehended the defendant about 40 miles north of the border. 421 F.3d 825, 828, 29 (9th Cir. 2005), *overruled on other grounds* by *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). After chasing the defendant into the desert for nearly a mile, the agent subdued and handcuffed the defendant. *Id.* Without giving any *Miranda* warning, the agent conducted an immigration inspection asking the defendant his place of birth, citizenship, whether he had immigration documents allowing him to be in the United States, and how he had crossed the border. *Id.* The responses were admissible. *Id.* at 830. The Court concluded that because there was a basis for the *Terry* stop, the agent could ask "questions 'reasonably related in scope to the justification for their initiation.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 29 (1968)).

Likewise, in *Medina-Villa*, the Ninth Circuit found the defendant was "not in custody and was not entitled to *Miranda* warnings … [e]ven though the border patrol agent prevented Medina from leaving the parking lot by blocking his car, approach[ed] [the car] with his gun drawn, and interrogat[ed] him about his citizenship and immigration status[.]" *United States v. Medina-Villa*, 567 F.3d 507, 520 (9th Cir. 2009).

14

And in *Vasquez-Olea*, an agent's apprehension of the defendant "was a non-custodial Terry stop occasioned by reasonable suspicion, and the questioning was reasonably limited in scope and duration to confirming that suspicion" even though the agent drew his pistol, chased after defendant, and ordered defendant to remain on the ground. 463 F. App'x 704, 705.

Here, Agent Seuferer conducted a standard *Terry* stop. The circumstances surrounding Agent's Seuferer's questioning are much milder compared to the cases above, in which the Ninth Circuit upheld admission of field statements. Agent Seuferer had reasonable suspicion to question Defendant after he was found hiding in the middle of the night near a shed wearing booties just two football fields north of the United States/Mexico International Border. TT at 12, 14–15. Although Agent Seuferer was accompanied by his canine partner, his canine was muzzled and secured on a "one foot leash" at Agent Seuferer's side, six feet away from Defendant. TT at 16. The remainder of facts Defendant claims created unique circumstances (i.e., head lamp and duty belt with a gun) merely describe the normal Border Patrol agent uniform at night. *See United States v. Bautista*, 684 F.2d 1286, 1292 (9th Cir. 1982) ("Strong but reasonable measures to insure the safety of the officer or the public can be taken without necessarily compelling a finding that the suspect was in custody.") (quotation omitted).

Defendant was not subjected to custodial interrogation at the time of the brief field inspection and necessarily, Defendant's appeal should be denied.

### b. Defendant's Field Statements Were Voluntary

Defendant also claims his field admissions were involuntary, but they were not. A statement is involuntary in violation of due process if a defendant's will was overborne viewing the totality of the circumstances. *United States v. Dickerson*, 530 U.S. 428, 434 (2000). Police coercion is a "necessary predicate" to a finding of involuntariness. *Connelly*, 479 U.S. at 167; *see id.* at 170–71 (Despite suspect's confession was in large part due to his psychotic, schizophrenic state, and that he

confessed because the "voice of God" told him he should do so, is irrelevant; confession was admissible because there was no police or governmental wrongdoing.). The focus is on whether the confession was obtained through practices "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985).

There are no voluntariness issues here. Agent Seuferer did not pull out a gun or handcuff Defendant; he merely asked him questions. TT at 18. Nothing offensive or out of the ordinary took place before or during the field interview. Defendant was not laying down "in a vulnerable position," *see* AOB at 20, but instead sitting while making his statements. TT at 17. Defendant's statements were voluntary and properly admitted at trial.

In sum, Defendant waived his challenges to the admission of his field statements based on voluntariness or in violation of *Miranda*. His arguments further fail on their merits and should be denied.

## C. All Testimony About Booties Was Properly Admitted and Considered

### i. Agent Seuferer Properly Testified About His Observations of Defendant's Booties

In a Memorandum of Investigation, Agent Seuferer reported he "noticed two 'booties' sticking out from the corner of the [shed]. 'Booties' are blankets tied to individual's feet in an attempt to disguise their shoe prints." Dkt. No. 26-1 at 2. The Government produced this Memorandum to Defendant in discovery. At trial, Agent Seuferer reiterated this observation. TT at 14. Defendant, nevertheless, argues that because photographs or the booties themselves were not preserved and produced under Federal Rule of Criminal Procedure 16, Agent Seuferer should not have been permitted to testify as to what he saw. AOB at 24–25.

Defendant's reliance on Rule 16 is misplaced. Instead, as the Magistrate Judge confirmed, Agent Seuferer's testimony about seeing booties implicates "the weight

[the Magistrate Judge] should apply to it"—analogizing the booties to brush often used by illegal entry defendants to hide but never preserved. TT at 40, 41.

An appellate court reviews factual findings for clear error and "give[s] even greater deference" to "factual findings rest[ing] on credibility determinations." *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 871 (9th Cir. 2001) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985). A lay witness may testify based on visual observations and may make reasonable inferences regarding those observations. *See United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) ("Personal knowledge includes opinions and inferences grounded in observations and experience.") (edits and quotation omitted).

Agent Seuferer testified exactly what he saw: Defendant wearing booties. All arguments presented later pertained to Defendant's observations. Defendant cross-examined Agent Seuferer and had the opportunity to persuade the Magistrate Judge that the absence of photographs or the physical booties undermined Agent Seuferer's credibility, but Defendant did not. Agent Seuferer's testimony was consistent with his report and the events surrounding Defendant's offense.

### ii. The Government's Failure to Preserve the Booties Did Not Violate Due Process

To the extent Defendant argues he has a due process claim based on the Government's alleged failure to preserve potentially exculpatory evidence, this claim is reviewed *de novo. United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013). Findings as to bad faith, are reviewed for clear error. *Id.* "The clear error standard is highly deferential and is only met when the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted).

Defendant argues he was deprived access to evidence when the Government "elicited testimony about [Defendant's] booties" but did not produce pictures of the booties nor the booties themselves. AOB at 25. To make out a due process claim, Defendant must, among other things, demonstrate the booties were destroyed in "bad

17

faith" by the government. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Defendant has not made this showing. That is because there is no evidence the Government acted intentionally or with the conscious effort to the destroy the booties. *See California v. Trombetta*, 467 U.S. 479, 488 (1984) (bad faith is "a conscious effort to suppress exculpatory evidence"). Indeed, the Magistrate Judge "did not grant [Defendant's Motion to Suppress booties testimony] in part because there was no evidence of bad faith on the part of the Government." TT at 111. Instead, Defendant simply points to the undisputed fact that the booties were not preserved. *See* TT at 40 (Government stating "It is my understanding that [the booties] were not preserved.") And while the Government should and could have done a better job in preserving the evidence, the Magistrate Judge's findings on the absence of bad faith were correct. *See Sivilla*, 714 F.3d at 1172 ("[W]hile the government was negligent in not preserving the evidence, [the defendant] is unable to establish that the government's actions rise to the level of bad faith … ."); *see also Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997) (rejecting due process claim when government's failure to preserve "was at most negligent").

The Magistrate Judge, therefore, did not commit clear error permitting Agent Seuferer to testify about the booties he saw Defendant wearing.

### D. The Government Proved Defendant's Alienage Beyond a Reasonable Doubt

Next, despite acknowledging Defendant's multiple alienage admissions in both the field and post-arrest, Defendant's A-file, absence of records in immigration application and status databases, and the facts surrounding Defendant's apprehension, Defendant argues the Government failed to prove alienage beyond a reasonable doubt. AOB at 27. Defendant argues the evidence was insufficient to convict him because the only proof of his alienage is his own statements, which he says were not corroborated by independent evidence.

"When the primary evidence of citizenship offered by the Government consists of the defendant's own admissions, those admissions require 'some independent corroborating evidence in order to serve as the basis for a conviction.'" *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) (quoting *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992)). This requirement stems from the *corpus delicti* doctrine, which requires a conviction rest on more than a defendant's uncorroborated confession. *See Opper v. United States*, 348 U.S. 84, 92–94 (1954).

In *Hernandez*, the Ninth Circuit held "[b]ecause corroboration of a defendant's admission is a mixed question of law and fact that is primarily factual, we review for clear error." 105 F.3d at 1332. Since then, however, the Ninth Circuit has reviewed *de novo* a denial of a motion for judgment of acquittal based on insufficient corroboration of alienage, requiring the court to "ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Valdez-Novoa*, 780 F.3d 906, 921 (9th Cir. 2015) (internal citation and quotation marks omitted); *United States v. Ruiz-Lopez*, 749 F.3d 1138, 1141 (9th Cir. 2014) (reviewing insufficient corroboration of alienage under *de novo* standard). The Government can prevail under either standard.

"The *corpus delicti* may be proved by circumstantial evidence." *Sandez v. United States*, 239 F.2d 239, 244 (9th Cir. 1956) (cited with approval in *United States v. Niebla-Torres*, 847 F.3d 1049, 1056 (9th Cir. 2017)). And in the context of illegal entry, "mode of entry" evidence, alone, can be "sufficient to provide the corroboration" of a defendant's admission of alienage. *United States v. Garcia-Villegas*, 575 F.3d 949, 951 (9th Cir. 2009).

Even if the Court were to credit Defendant's argument that his statements to Agent Ruiz should be suppressed, the remaining evidence—Defendant's admissions to Agent Seuferer, corroborated by Agent Seuferer's observations— are sufficient to sustain Defendant's conviction. Here, upon apprehension just hours before his post-

19

arrest statement, Defendant admitted to Agent Seuferer he was a citizen of Mexico without lawful permission to enter the United States. TT at 22.

And even if all statements were suppressed, Defendant's unlawful entry is supported by Agent Seuferer's independent observations. Agent Seuferer encountered Defendant in a remote area, past 10:30 at night (when no businesses were open and no buses running) only 200 yards from the border, actively attempting to conceal himself by laying down near a shed close to a low section of the border fence that was being replaced. *Id.* at 12–14, 45. Agent Seuferer testified he had seen one person arrested in the same area just minutes before. *Id.* at 13. He further testified he encountered "Defendant wearing blankets that he intertwined to tie them tightly around the shoes," which are used to "disguise [a person's] footprints from pursing border patrol agents." *Id.* at 22–23. And Agent Seuferer confirmed that he had never encountered a United States citizen hiding or wearing booties in the area Defendant was apprehended. *Id.* at 22.

Additionally, immigration-database searches listed Defendant as a "Mexican citizen [without] permission to enter the United States"; that and his "Entry Without Inspections" status corroborate Defendant's admissions. TT at 89. Specifically, Agent Alexander Cross testified that he reviewed Defendant's A-file, along with the CIS and CLAIMS databases, and found that "[Defendant] did not" have "permission to enter the United States on February 4th, 2020." *Id.* at 88–89; *see United States v. Cabrera-Hoil*, No. 19-cr-0073-JTR, 2019 WL 3412915, at *3 (E.D. Wash. July 29, 2019) (Although the immigration agency's CIS database alone was insufficient to establish alienage, combined with defendant's admissions, the Court found defendants guilty of attempted illegal entry.).

Defendant argues the Ninth Circuit has never held "mode of entry" evidence alone is sufficient to prove that a person is not a U.S. citizen for the purposes of illegal entry prosecutions. AOB at 27. But that is not the issue here. Rather, this case concerns whether "mode of entry" evidence is sufficient to corroborate Defendant's

20

admission that he had no legal authority to be in the United States.[1] Defendant contends other judges in this district have held similar evidence is not sufficient to corroborate an admission of alienage, but in *Garcia-Villegas*, the Ninth Circuit found such evidence constituted sufficient corroboration. 575 F.3d at 951. There, the defendant admitted the elements of illegal entry and "the government supplemented these admissions with the testimony of one witness who saw [defendant] climbing the fences marking the border, and one who apprehended him, with torn clothes and bloody hands, hiding in a bush on the American side." *Id.* The Court thus concluded the defendant's "admissions were corroborated" and "[h]is guilt was proved." *Id.*

*Garcia-Villegas* is analogous here. A reasonable factfinder could infer from the circumstances of Defendant's apprehension, as testified to by Agent Seuferer, that Defendant had no legal right to enter the United States. *See Garcia-Villegas*, 575 F.3d at 951. His statements, actions, and surrounding circumstances all establish he illegally entered the United States. There is no risk Defendant's conviction is based on a false confession.

Tellingly, Defendant fails to cite a single Ninth Circuit case finding insufficient corroboration in this context. Instead, Defendant relies on one magistrate and two district court decisions. Two of those cases did not have post-arrest admissions of alienage, only non-recorded and less detailed field admissions. The context Defendant provides for the third decision would indicate it runs counter to Ninth Circuit law outlined above. *But see United States v. Gonzalez-Godinez*, No. 19-cr-3506-BGS-DMS, 2021 WL 533517, at *3 (S.D. Cal. Feb. 12, 2021) (affirming § 1325(a) conviction based on an agent's corroboration he "encountered [defendant] in a remote area, only thirty

---

[1] Under the *corpus delicti* rule government must introduce corroborating evidence "to support independently only the gravamen of the offense—the existence of the injury that forms the core of the offense and a link to a criminal actor … ." *Lopez-Alvarez*, 970 F.2d at 591; *see Thomas v. United States*, 370 F.2d 621, 623 n.3 (9th Cir.1967) ("[I]n those cases where the crime involves no tangible *corpus delicti*, the corroborative evidence need show no more than the trustworthiness of the admission or confession—it need not show the actual commission of the crime.").

yards from the border, and a section of the border fence in that area had been removed. … [H]e observed two individuals, one of whom was sliding down the embankment and one of whom was hiding in the brush"). In any event, the standard is not what other judges did on specific facts of other cases, it is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hernandez*, 105 F.3d at 1332. Here, the trier of fact—the Magistrate Judge—made such a finding, and rationally so.

Accordingly, the Court should affirm the Magistrate Judge's conclusion that the government proved Defendant's alienage beyond a reasonable doubt.

### E. Section 1325(a)(1) Does Not Violate Equal Protection

Finally, Defendant briefly claims the Magistrate Judge erred in denying his motion to dismiss based on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). AOB at 28. This issue is pending in the Ninth Circuit. *See United States v. Carrillo-Lopez*, No. 21-10233. In the meantime, every court in this district to consider the issue has rejected Defendant's claims.[2] This Court should do the same.

/ /

/ /

/ /

/ /

/ /

/ /

---

[2] *See, e.g.*, *United States v. Campos-Atrisco*, No. 19-mj-024683-KSC-BAS, 2021 WL 5332918, at *4–5 (S.D. Cal. Nov. 16, 2021); *United States v. Gallegos-Aparicio*, No. 19-cr-2637-GPC, 2020 WL 7318124, at *1–4 (S.D. Cal. Dec. 11, 2020); *United States v. Rios-Montano*, No. 19-cr-2123-GPC, 2020 WL 7226441, at *2–8 (S.D. Cal. Dec. 8, 2020); *United States v. Lazcano-Neria*, No. 20-mj-04538-AHG, 2020 WL 6363685, at *6–9 (S.D. Cal. Oct. 29, 2020); *Lucas-Hernandez*, 2020 WL 6161150, at *2–4; *United States v. Morales-Roblero*, No. 19-mj-24442-AHG, 2020 WL 5517594, at *7–10 (S.D. Cal. Sept. 14, 2020).

22

# V.    CONCLUSION

Defendant was properly tried and convicted. His conviction should be affirmed.

DATED: December 28, 2022              Respectfully submitted,

                                      Randy Grossman
                                      United States Attorney

                                      *s/Evangeline A. Dech*
                                      Assistant U.S. Attorney